IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                                *
JOETTE PAULONE,
                                *
      Plaintiff,
                                *
         v.                          CIVIL NO.:  WDQ-09-2007
                                *
CITY OF FREDERICK, et al.
                                *
      Defendants.
                                *

  *    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION

Joette Paulone sued the State of Maryland, the Frederick
County Board of County Commissioners, and Sheriff Charles
Jenkins for violations of Title II of the Americans with
Disabilities Act ("ADA"), § 504 of the Rehabilitation Act, and
related torts.  Pending are Jenkins's motion to dismiss and
Maryland's motion to dismiss or, in the alternative, for summary
judgment.  For the following reasons, Jenkins's motion will be
granted, and Maryland's motion will be granted in part and
denied in part.

I.  Background

On the evening of July 31, 2008, Frederick County Police
Officer McGregor stopped Joette Paulone--a deaf woman--on

suspicion of drunk driving.  Compl. ¶ 13.[1]  Paulone was arrested

after she failed a field sobriety test and was taken to the

Frederick Police Department Headquarters.  *Id*. ¶¶ 14-15.  During

her two and a half hour detention at Police Headquarters,

Paulone repeatedly requested but was denied a sign language

interpreter.[2]  *Id*. ¶¶ 16-17.  She was forced to sign forms even

though she had indicated that she did not understand them.  *Id*.

¶¶ 18-20.

Paulone was then transported to the Frederick County Adult

Detention Center, where she again requested and was denied an

interpreter during her eight hour detention.  *Id*. ¶¶ 23-24.  The

Detention Center TTY device, which would have allowed Paulone to

make a telephone call, was not working.  *Id*. ¶¶ 26-27.[3]  Paulone

asked that the TTY machine be plugged in to allow its battery to

charge, but her request was ignored.  *Id*. ¶¶ 27-28.  She

repeatedly asked how long she would be detained but could not

---

[1]  For the motion to dismiss, the well-pleaded allegations in the
Complaint are accepted as true.  *See Mylan Labs., Inc. v.
Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In the motion for
summary judgment, the Court will draw inferences from the facts
in the light most favorable to Paulone, the non-moving party.
*See Matsushita Elec. Indus. Co. v. Zennith Radio Corp.*, 475 U.S.
574, 587 (1986).

[2]  No one at the Department attempted to contact a sign language
interpreter for Paulone.  Compl. ¶ 17.

[3]  Paulone observed other inmates being released soon after
making telephone calls.  Compl. ¶ 25.

communicate with the officers at the Detention Center.  *Id*. ¶ 29.  To gain her release, Paulone again signed papers without the help of an interpreter or an explanation of what she was signing.  *Id*. ¶¶ 30-31.[4]

On October 7, 2008, the Frederick County District Court put Paulone on 18-months of supervised probation, which included an evaluation for alcohol addiction and attendance at a Mothers Against Drunk Driving ("MADD") victim impact panel.  *Id*. ¶¶ 39-40; Patrick G. McGee Aff. ¶ 4, Sept. 23, 2009.  On October 8, 2008, Paulone reported for intake at the Division of Parole and Probation ("the Division") and met with Krissie Smith-Alvey who noted that Paulone was deaf and needed an interpreter.  McGee Aff. ¶ 5.  Although Paulone was not provided with an interpreter during this initial visit to the Division, the case notes indicate that Paulone and Smith-Alvey were able to communicate.  *Id*. ¶ 7; Compl. ¶ 41.[5]

On November 10, 2008, Paulone reported for her initial appointment with her monitor, Lorraine Halpin, and sign language

---

[4]  Because she did not have an interpreter, Paulone missed her opportunity to request a hearing with the Motor Vehicle Administration, and her driver's license was suspended for 120 days.  Compl. ¶¶ 35-36.

[5]  The Division "did not provide an interpreter for [Paulone] when she reported for intake . . . because she had not, prior to appearing, put the Division on notice that she would require an interpreter."  McGee Aff. ¶ 7.

3

interpreter Joann Griffin at the Division's Drinking Driving Monitor Program ("DDMP").  McGee Aff. ¶¶ 5, 9.[6]  On January 23, 2009, Halpin denied Paulone's request for a State provided interpreter at her mandatory MADD meeting and her alcohol evaluation, testing, and treatment.  *Id*. ¶ 11.[7]  On February 4, 2009, Paulone attended the required MADD meeting; Halpin received a letter verifying her attendance on February 10, 2009. *Id*. ¶ 12.  On February 12, 2009, Paulone informed the City of Frederick, the Board of Commissioners, and the Division that she intended to file a complaint for disability discrimination.  *Id*. ¶ 14.

On February 19, 2009, DDMP monitors and an interpreter met with Paulone, directed her to enroll in a six-week or 12-hour alcohol education class by March 17, 2009, and told her that the Division was not required to provide an interpreter for those classes.  *Id*. ¶ 15.  Paulone was given a list of eight different alcohol education providers and chose Project 103, a Frederick

---

[6]  "DDMP did not require [Paulone] to report to her monitor for supervision until it had secured the services of a sign language interpreter for her."  *Id*. ¶ 8.  Before Griffin's appointment, Paulone maintained contact with Halpin by email.  *Id*.  Halpin also cancelled monitoring meetings with Paulone and rescheduled them to ensure that an interpreter was always present at their meetings.  *Id*. ¶ 11.

[7]  Halpin also refused to use Paulone's psychologist as a treatment provider because she was not certified by the State as an addictions counselor.  *Id*. ¶ 11.

County Health Department program.  *Id*. ¶¶ 15-17.[8]  On March 11,

2009, Halpin reminded Paulone that she had to be enrolled in

treatment by March 17, 2009.  *Id*. ¶ 19.

On March 17, 2009, Paulone tried to register for a DUI

education class at Crossroads[9] but was not permitted to register

because she had not brought an interpreter.[10]  *Id*. ¶ 20.  Later

that day, Paulone met with Halpin,[11] explained her unsuccessful

attempt to register, and agreed to request that Crossroads

provide an interpreter for her alcohol education classes.  *Id*.

Ex. C at 3, Ex. O.  On March 25, 2009, Paulone sent a letter to

Crossroads, requesting that it supply an interpreter for her DUI

education classes.  *Id*. Ex. O.  On March 31, 2009, DDMP

requested that the Frederick County District Court issue a

summons for Paulone because she had not enrolled in an alcohol

education class, a condition of her probation.  *Id*. ¶ 22; Compl.

---

[8]  A letter from the Division to Paulone stated that "[b]ecause
DDMP simply monitors [Paulone's] compliance with this condition
of her probation, DDMP is under no legal obligation to provide
[Paulone] with an interpreter for the classes."  *Id*. Ex. L at 1.

[9]  The parties have not identified Crossroads' governmental
affiliation.

[10]  Paulone alleges that she appeared twice for her required
alcohol awareness classes but was not admitted because she had
not brought an interpreter.  Compl. ¶ 44.

[11]  An interpreter was present at this meeting and all subsequent
meetings with Paulone and DDMP monitors.  *See* McGee Aff. ¶¶ 20,
24, 26

¶¶ 43, 45.  A show cause hearing was scheduled for June 2, 2009. McGee Aff. ¶ 23.

In April 2009, Paulone informed the Division of her efforts to enroll in a treatment program and explained her problems securing an interpreter through Crossroads.  *Id.* ¶ 24, Ex. S.[12] In a May 7, 2009 letter, Addiction Counselor Laura Dreany-Pyles informed DDMP that Paulone had enrolled in a DWI education class with Deaf Addiction Services at the University of Maryland School of Medicine; she was expected to complete it by June 3, 2009.  *Id*. Ex. T.  On May 29, 2009, Paulone met with Lucas, who reminded her about the upcoming show cause hearing.  *Id*. ¶ 26.[13]

At the hearing on June 2, 2009, the judge granted Halpin's requests to dismiss the probation violation charge against Paulone and allowed her probation to be unsupervised after she completed the alcohol education classes.  *Id*. ¶ 27.  On June 5, 2009, Paulone completed her alcohol education classes.  *Id*. ¶ 28.

---

[12]  In correspondence around this time, Monitor Supervisor Mark Lucas told Paulone that the Division would request a withdrawal of its petition and ask the court to continue Paulone's supervision if she started attending alcohol education classes before her June 2, 2009 hearing.  McGee Aff. ¶ 23.

[13]  Paulone alleges that she had to pay an attorney to appear at this hearing to defend her failure to meet probation requirements.  Compl. ¶ 46.  She further alleges she suffered "fear, anxiety and shame she felt as a result of her interaction" with employees of Frederick County and the State of Maryland.  Compl. ¶ 50.  She continues counseling for stress and anxiety related to these events.  *Id*. ¶ 51.

On July 10, 2009, the Maryland State Treasurer's Office received notice of Paulone's intent to file a claim against the State for "violations of the Americans with Disabilities Act, among other things." Sharon G. Barry Aff. ¶ 2, Ex. A at 2, August 24, 2009. On July 30, 2009, Paulone sued the City of Frederick,[14] the Frederick County Board of County Commissioners, the State of Maryland, and Charles Jenkins. Paper No. 1. On August 18, 2009, Jenkins filed a motion to dismiss, and Frederick County filed an answer. Paper Nos. 11, 13. On September 24, 2009, Maryland filed a motion to dismiss or for summary judgment, and the City of Frederick filed an answer. Paper Nos. 21, 22.

## II. Analysis

### A. Standard of Review

#### 1. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of*

---

[14] On October 21, 2009, the Court granted the motion to dismiss the City of Frederick with prejudice. Paper No. 31.

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).[15]  The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

If the court considers matters outside of the pleading on a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment and provide all parties a "reasonable

---

[15]  The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557).  The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id*. at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)).  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id*. (internal quotation marks omitted).

opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b).  "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985).[16]  Here, Maryland filed two affidavits and numerous documents as exhibits to its motion.  The caption of Maryland's motion--to dismiss, or in the alternative, for summary judgment--also gave notice of possible resolution of the motion on summary judgment.  Because Paulone knew about the pending motion for summary judgment, she could have presented her defense or requested additional time for discovery.[17]  Accordingly,

---

[16]   The caption of a motion and subsequent filings show that Paulone, the non-moving party, had actual notice that claims might be resolved on summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) (plaintiff was on notice when the caption read "Motion to Dismiss, or, in the alternative, Motion for Summary Judgment" and she captioned her memorandum as a response to such and filed affidavits).  The Court need not provide notice of its intent to treat Maryland's motion as one for summary judgment.  *See id.* at 261 ("The district court, while it clearly has an obligation to notify parties regarding any court-instituted changes in pending proceedings, does not have an obligation to notify parties of the obvious.").

[17]   Paulone argued against summary judgment but provided no affidavits, depositions, or other materials to support her opposition.  *See* Pl.'s Maryland Opp. 5-6.  She also failed to request additional time for discovery under Rule 56(f).  *See Webster v. Rumsfeld*, 156 Fed. Appx. 571, 576 (4th Cir. 2005) (Rule 56(f) permits the Court to "deny a premature motion for summary judgment [when] the nonmoving party demonstrates that he

resolution of the claims against Maryland on summary judgment is
appropriate.

>       2.   Rule 56

Under Rule 56(c), summary judgment "should be rendered if
the pleadings, the discovery and disclosure materials on file,
and any affidavits show that there is no genuine dispute as to
any material fact and that the movant is entitled to judgment as
a matter of law." Fed. R. Civ. P. 56(c). In considering a
motion for summary judgment, "the judge's function is not . . .
to weigh the evidence and determine the truth of the matter but
to determine whether there is a genuine issue for trial."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A
dispute about a material fact is genuine "if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most
favorable to . . . the nonmovant, and draw all reasonable
inferences in h[er] favor," *Dennis v. Columbia Colleton Med.
Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court
also must abide by the "affirmative obligation of the trial
judge to prevent factually unsupported claims and defenses from
proceeding to trial," *Bouchat v. Baltimore Ravens Football Club,*

---

has not had adequate time for discovery or needs additional time
to complete it.").

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

      B.    State of Maryland's Motion to Dismiss or for Summary Judgment[18]

      1.    ADA and Rehabilitation Act Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132 (2006).[19] Section 504 of the Rehabilitation Act similarly provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of [her] disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2006). To establish a violation of either statute,[20] Paulone

---

[18]  Maryland has not contested its liability for the acts and omissions of employees with the Frederick Police Department, Frederick County Adult Detention Center, and Division of Parole and Probation.

[19]  A "qualified individual with a disability" is one who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "Public entities" include State or local governments and their instrumentalities. *Id*. § 12131(1).

[20]  "[T]he ADA and Rehabilitation Act generally . . . impose the same requirements, and because the language of the Acts is substantially the same, [the Court] appl[ies] the same analysis

must show that: (1) she is a qualified individual with a disability, (2) she was discriminated against, excluded from participation in, or denied the benefits of a public entity's services, programs, or activities; and (3) the discrimination, exclusion, or denial of benefits was because of her disability.[21]

Under the Rehabilitation Act, a plaintiff also must show that the program or activity in question receives federal financial assistance. *See Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 119 (7th Cir. 1997). Because Paulone failed to allege that any program or activity implicated by the complaint received federal funds, her Rehabilitation Act claims against Maryland must be dismissed.

Paulone, a deaf woman, is a qualified individual with a disability.[22] She has alleged that, after her arrest on July 31,

---

to both." *Spencer v. Earley*, 278 Fed. Appx. 254, 261 (4th Cir. 2008) (internal quotations omitted). But one important difference between these statutes is the causal link required between the discrimination and the adverse action. *Id*. at n.6. Under Section 504 of the Rehabilitation Act a qualified disabled person may not be discriminated against "*solely* by reason of" her disability. 29 U.S.C. § 794(a) (emphasis added). By contrast, the ADA prohibits a broader range of discrimination against a disabled person. 42 U.S.C. § 12132; *see also Baird*, 192 F.3d at 469 ("[T]he ADA does not impose a 'solely by reason of' standard of causation.").

[21] *Spencer*, 278 Fed. Appx. at 261; *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999); *Hanebrink v. Adams*, 2009 WL 3571539, at *2 (D.S.C. Oct. 26, 2009).

[22] Under the ADA, a disabled individual is one who has a "physical or mental impairment that substantially limits one or

2008 and during her probation, State officials discriminated and denied her benefits because of her disability.

    a.   Paulone's Arrest and Detention[23]

In an arrest context, courts have recognized two types of ADA claims under Title II: (1) wrongful arrest of a suspect based on his disability and not for any criminal activity, and (2) failure to make reasonable accommodation during a lawful arrest and investigation, causing the disabled person to suffer greater injury or indignity than other arrestees. *Waller v. City of Danville*, 556 F.3d 171, 174 (4th Cir. 2009). Paulone does not allege that her arrest was wrongful but asserts that, after her arrest and during her detention, Maryland officers denied her (1) use of a working TTY machine to call from the

---

more of [her] major life activities," "a record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006). Deafness is among the conditions that will "always substantially limit [a] major life activit[y]" of deaf individuals. *Runnebaum v. NationsBank of Maryland, N.A.*, 123 F.3d 156, 166 (4th Cir. 1997). The parties do not dispute that Paulone is a "qualified individual with a disability" or that the government entities identified in the complaint are "public entities."

[23] The complaint alleges that Maryland violated the ADA by "failing to provide [Paulone] a qualified sign language interpreter during intake and processing after her arrest." Compl. ¶ 70. Maryland has not addressed these allegations in its arguments for summary judgment. *See* Md.'s Mot. 14-17. Thus, the Court will only consider them on the motion to dismiss.

Detention Center,[24] (2) help in reading and understanding forms, and (3) access to a sign language interpreter.

The ADA "impose[s] a duty on law enforcement to provide arrestees who are disabled with reasonable accommodations once an arrest of a disabled person has been accomplished." *Ryan v. Vermont State Police*, --F. Supp. 2d--, 2009 WL 3536644, at *9 (D. Vt. June 1, 2009). Law enforcement officers must take the steps "reasonably necessary to establish effective communication with a hearing-impaired person after a DUI arrest." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1087 (11th Cir. 2007).[25] Here, Paulone has alleged that necessary steps were not taken to ensure her communication with officers at the Frederick Police Department Headquarters and the County Detention Center. Thus, she has stated a claim for disability discrimination during her detention under the ADA.

---

[24] Paulone has alleged that she saw other arrestees being released after making phone calls.

[25] The accommodations necessary "will depend on all the factual circumstances" and should consider: "(1) the ability of, and the usual and preferred method of communication used by, the hearing impaired arrestee; (2) the nature of the criminal activity involved and the importance, complexity, context, and duration of the police communication at issue; (3) the location of the communication and whether it is a one-on-one communication; and (4) whether the arrestee's requested method of communication imposes an undue burden or fundamental change and whether another effective, but non-burdensome, method of communication exists." *Bircoll*, 480 F.3d at 1087.

b.    Division of Parole and Probation[26]

i.    Intake and Probation Meetings

Paulone alleges that Maryland violated the ADA by failing timely to provide an interpreter for her probation meetings with her DDMP monitors.  Compl. ¶¶ 70, 73.  Maryland argues that the Division provided an interpreter for Paulone during each of her DDMP meetings and only failed to do so for her intake interview because she had not notified the Division that she needed assistance.  Md.'s Mot. 14-15.

The regulations implementing Title II provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7) (2009).  It must "take appropriate steps to ensure that communication with . . . members of the public with disabilities are as effective as communications with others."  28 C.F.R. § 35.160(a) (2009). This includes providing "qualified interpreters or other

---

[26]  Maryland has addressed the allegations of disability discrimination by the Division of Parole and Probation in its motion to dismiss and for summary judgment.  *See* Md.'s Mot. 5-9, 14-17.  Because the Court will consider materials outside the pleadings, these claims will be considered under Rule 56.  *See* Fed. R. Civ. P. 12(d).

effective methods of making aurally delivered materials available to individuals with hearing impairments."  42 U.S.C. § 12102(1)(A) (2006).  But the reasonable accommodation requirement "usually does not apply unless triggered by a request."  *Kiman v. New Hampshire Dept. of Corrections*, 451 F.3d 274, 283 (1st Cir. 2006)(internal quotations omitted).

Maryland has shown that it provided an interpreter for Paulone during her meetings with DDMP monitors and offered a reasonable explanation for its failure to do so at her initial intake on October 8, 2008.[27]  Because Paulone failed to request an interpreter for her intake interview, the Division did not discriminate when it failed to provide that service.  On these facts, no reasonable jury could conclude that the Division did not adequately accommodate her disability during her probation meetings, and Maryland is entitled to summary judgment on this claim.

ii.  Alcohol Awareness and Treatment Classes

Paulone alleges that Maryland violated the ADA and Rehabilitation Act by failing to provide an interpreter for her court-ordered alcohol education and MADD classes.[28]  Maryland

_____

[27]  Paulone has presented no opposing evidence.

[28]  The evidence shows that Paulone asked the Division to provide her with an interpreter for these programs, but her requests were denied.  McGee Aff. ¶ 11, Ex. C at 3, 5.

16

contends that the "private treatment providers"[29] and not the Division were responsible for providing interpreters for Paulone's alcohol education classes. Md.'s Mot. 8.

Title II protects qualified disabled individuals from discrimination in the provision of "services, programs, or activities *of* public entities." *See* 42 U.S.C. § 12132 (emphasis added). Maryland has provided no evidence that one of the eight DUI education class providers or MADD had a deaf accessible program. *Rosen v. Montgomery County*, 121 F.3d 154, 158-59 (4th Cir. 1997) (Montgomery County was not required to provide a deaf parolee with an interpreter for his chosen alcohol education program because an equally convenient deaf-accessible program was available to him). Maryland may be liable if none of the programs Paulone was required to attend provided interpreters. Accordingly, Maryland's motion must be denied.[30]

---

[29] Title III of the ADA requires places of "public accommodation" to be accessible to and useable by qualified individuals with disabilities. 42 U.S.C. § 12182(a). "Reasonable modifications" must be made to policies and procedures so that the disabled can participate. Id. § 12182(b)(2)(A)(ii). "Auxiliary aids and services" that ensure effective communication for people with disabilities must also be provided so long as they do not create an undue burden or fundamentally alter the services that the program offers. *Id.* § 12182(b)(2)(A)(iii).

[30] Paulone alleges that Maryland's failure to provide her with timely access to an interpreter led to a violation hearing, which required her to incur the cost of an attorney for that court appearance. Compl. ¶ 45. Maryland law requires the Division of Parole and Probation to determine whether a

2.   Negligent Training and Supervision Claims[31]

Paulone has alleged that she was denied an interpreter because the Frederick County Department of Parole and Probation officers were negligently trained and supervised by the State. Compl. ¶¶ 86-87.   Maryland argues that Paulone cannot bring a tort action against the State because she gave inadequate notice of her intent to file this claim and alleged insufficient facts to show the State's negligence.   Md.'s Mot. 10-14.

a.   MTCA Notice Requirement

Maryland argues that it has sovereign immunity because Paulone failed to give required notice before bringing a claim under the Maryland Tort Claims Act ("MTCA").   Md.'s Mot. 10-13.

The MTCA provides a limited waiver of sovereign immunity and is "the sole means by which the State of Maryland and its personnel may be sued in tort." *Swagler*, 2009 WL 1575326 at

---

probationer is complying with her probation conditions and to notify the court of noncompliance. *See* Md. Code Ann., Corr. Servs., § 6-111 (West 2009).   Thus, the Division was legally required to notify the court of Paulone's failure to complete her alcohol education requirements.   But, if the State wrongfully refused to provide Paulone with an interpreter for her alcohol education classes, a reasonable jury might find that it caused the delay and is liable for Paulone's expenses to defend herself at the hearing.

[31]   Paulone's negligence claim is a matter of Maryland common law and "is not a federal claim."   Pl.'s Md. Opp. at 5.   Because Maryland's motion for summary judgment does not address the negligence claim, the Court will only consider it on the motion to dismiss.

*4.[32]  This waiver is conditioned upon, *inter alia*, the injured party filing notice of its tort claim with the State Treasurer's Office within one year after the injury.  Md. Code Ann., State Gov't § 12-106(b)(1) (West 2009).  The Court may not "entertain claims by claimants who fail to exhaust their administrative remedies before the Treasurer." *Chinwuba v. Larsen*, 142 Md. App. 327, 790 A.2d 83, 98 (Md. Ct. Spec. App. 2002), *rev'd on other grounds*, 377 Md. 92, 832 A.2d 193 (Md. 2003).

A plaintiff must show actual or "substantial compliance" with the notice requirement such that the State has "requisite and timely notice of facts and circumstances giving rise to the claim." *Condon v. University of Maryland*, 332 Md. 481, 632 A.2d 753, 760 (Md. 1993) (internal quotation omitted).  The State Treasurer's Office has promulgated regulations that require a claim to include "a statement of facts that sets forth the nature of the claim, including the date, time, place, and description of the incident."  Md. Code Regs. 25.02.03.01(A)(1) (2009).

Maryland argues that Paulone's July 6, 2009 letter to the State Treasurer failed to provide adequate notice of her intention to file claims against the State for negligent

---

[32]  Under the MTCA, "[i]f the State is liable, the individual is immune; if the individual is liable, the State is immune." *Newell v. Runnels*, 407 Md. 578, 636 (Md. 2009).

training and supervision.[33]  Md.'s Mot. 13.  But Paulone's letter
stated her intent to file "a Complaint alleging violations of
the [ADA], *among other things*," and she listed "training in deaf
awareness" among her requested remedies.  Barry Aff. Ex. A. at
1, 5 (emphasis added).  She also provided a lengthy explanation
of the allegations underlying her complaints.[34]  Thus, Paulone
provided adequate notice of the facts and circumstances giving
rise to her tort claim against the State.

> b.    Allegations of Negligent Training and
>       Supervision

To state a claim for negligence, Paulone must show that
Maryland (1) had a duty or obligation to protect her from
injury, (2) breached that duty, and (3) caused her to suffer
actual loss or injury proximately resulting from that breach.
*See Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107,
814 A.2d 127, 138 (Md. Ct. Spec. App. 2002).  Paulone has
alleged that Maryland had a duty under the ADA to provide an
interpreter for her court-ordered alcohol education, and it
breached that duty by failing to train the Division to provide
such free service.  She has further alleged that she suffered

---

[33]  As her alleged injuries occurred on or after July 31, 2008,
Paulone's notice was timely filed on July 10, 2009.

[34]  Because notice to the State Treasurer before filing a claim
against the State is required by the MTCA but not the ADA,
receipt of this letter was notice of Paulone's intent to file
tort claims against Maryland.

emotional, psychological, and financial injuries because of the State's negligence.  Thus, Paulone has stated a claim for negligent supervision and training.[35]

C.   Jenkins's Motion to Dismiss[36]

Paulone's sole claim against Jenkins is for negligent training and supervision of the State officials who allegedly committed the ADA and Rehabilitation Act violations.[37]  Jenkins argues that he is entitled to statutory immunity because he was a state or county official[38] acting within the scope of his official duties at the time of his allegedly tortious conduct. Jenkins Mot. 3-4.

---

[35]  Maryland's sole argument is that "the complaint fails to state a claim for a violation of either the ADA or the Rehabilitation Act . . . [and thus Paulone's] common law claims for negligent training and supervision must fail as well." Md.'s Mot. 14.

[36]  Paulone brought negligent supervision claims under Maryland common law and has not alleged constitutional injuries or brought claims under § 1983.  *See* Compl. ¶¶ 79-84.  Thus, Jenkins's federal defenses will not be addressed.

[37]  Paulone brought this claim against Jenkins in his individual capacity.

[38]  Jenkins "makes no concession concerning whether he was and is a County or State official."  Jenkins Mot. 3.  He argues that he is immune from suit in either capacity.  *Id.* at 4.  Under Maryland law, a county sheriff or deputy sheriff is a State official.  *Rucker v. Harford County*, 316 Md. 275, 558 A.2d 399, 402 (Md. 1989).  Thus, Jenkins's liability will be analyzed under the MTCA framework, which confers qualified immunity on state officials.  *See* Md. Code Ann., State Gov't § 12-101(a)(6) (West 2009); *Barbre v. Pope*, 402 Md. 157, 173 (Md. 2007); *Swagler v. Harford County*, 2009 WL 1575326, at *3 n.2 (D. Md. June 2, 2009).

Under the MTCA, state personnel[39] are immune from suit and personal liability for tortious conduct within the scope of their public duties if committed without actual malice[40] or gross negligence.  Md. Code Ann., State Gov't § 12-105 (West 2009).[41] Actual malice is intentional conduct "without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."[42]  Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."[43]

Paulone alleges that Jenkins knew that officers routinely "refuse[d] to provide interpreters or auxiliary communication devices" and "condone[d] such practices by failing to

---

[39]  Section 12-101 defines "state personnel" to include "a sheriff or deputy sheriff of a county or Baltimore City."  Md. Code Ann., State Gov't § 12-101(a)(6) (West 2009).

[40]  *Shoemaker v. Smith*, 353 Md. 143, 725 A.2d 549, 560 (Md. 1999)(applying the standard of "actual malice" for public official immunity).

[41]  *See also* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (West 2009).

[42]  *Thacker v. City of Hyattsville,* 135 Md. App. 268, 762 A.2d 172, 189 (Md. Ct. Spec. App. 2000) (*quoting Shoemaker,* 725 A.2d at 560).

[43]  *Newell v. Runnels*, 407 Md. 578, 638, 967 A.2d 729 (Md. 2009).

effectively train [them]. . . or to modify policies to ensure effective communication" with deaf and hard-of-hearing individuals.  Compl. ¶ 37.[44]   But the only facts pled to show that officers "routinely violated the civil rights of deaf and hard-of-hearing residents of Frederick County" and that Jenkins "condoned" such behavior are the allegations of Paulone's mistreatment.  Paulone has not alleged that Jenkins knew of the TTY machine problems or the officers' training deficiencies before her incarceration.  Because no facts allege that Jenkins intentionally disregarded a manifest duty or had an evil motive, Paulone has not pled facts to show that he acted with gross negligence or actual malice.[45]   Thus, Jenkins is entitled to statutory immunity on the negligent training and supervision claim.

---

[44]   The complaint concedes that Jenkins was at all relevant times "acting within the course and scope of his employment."  Compl. ¶ 10; *see also* Compl. ¶ 38.

[45]   Mere allegations that Jenkins "conduct was insensitive, outrageous and malicious," Compl. ¶ 38, and that he acted "negligently, carelessly, recklessly, maliciously, and with deliberate indifference," *id*. ¶ 81, are insufficient.  *See Elliott v. Kupferman*, 58 Md. App. 510, 473 A.2d 960, 969 (Md. Ct. Spec. App. 1984) ("To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious."); *Swagler v. Harford County*, 2009 WL 1575326, *4 (D. Md. June 2, 2009) ("Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations.").

III. Conclusion

For the reasons stated above, Jenkins's motion to dismiss will be granted.  Maryland's motion to dismiss the Rehabilitation Act claim will be granted; its motion to dismiss or for summary judgment on the ADA claims will be granted in part and denied in part; its motion to dismiss or for summary judgment on the negligent training and supervision claim will be denied.


February 17, 2010                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge